Docusign Envelope ID: DB11B747-1868-4199-8075-627F9C5BB55D

## UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WASHINGTON

## AT SEATTLE

| | |
|---|---|
| **DATASPAN HOLDINGS, INC.,** | Case No. 2:25-cv-02607 |
| **Plaintiff,** | **DECLARATION OF JOHN BATES** |
| **vs.** | |
| **MARIAN CHOQUER,** | |
| **Defendant.** | |

I, John Bates, declare and affirm the truth of the following:

1. I am an adult of legal age and sound mind. The matters set forth in this Declaration are made upon my own personal knowledge as well as information known and available to me in the ordinary course of business, including through corporate records and information relayed to me through others in the company. I would testify consistent with this Declaration if called to provide live testimony. I make this declaration in support of Plaintiff's Motion for Temporary Restraining Order.

2. I am employed by DataSpan Holdings, Inc. ("DataSpan"). My current position is Vice President of Operations.

3. In my role, I worked with Marian Choquer ("Ms. Choquer") a former Account Manager at DataSpan, on a regular basis, including in the course of supporting business development and client management efforts.

4. In late 2024 and early 2025, Ms. Choquer worked as the Account Manager for a significant floor replacement project at a data center (the "Floor Replacement Project") for DataSpan's key longtime client ("MS").

5. Despite DataSpan's successful completion of Phase I of the Floor Replacement Project, MS opted to purchase the tile and installation services for Phase II directly from Modular Interiors by Cook's ("Cook's"), which had provided the tiles for Phase I.

6. During the week of November 10, 2025, I requested a meeting with Ms. Choquer to discuss concerns with her employment and performance. On November 13, 2025, I traveled from Florida to Washington to meet Ms. Choquer in person near her home in Redmond. Alex Von Hassler, DataSpan's Internal Tech Architect, also traveled from Oregon to attend the meeting with me.

7. During our November 13 meeting, I asked Ms. Choquer why DataSpan had not been awarded the Phase II work.

8. Ms. Choquer feigned ignorance, suggesting she did not know how or why Cook's won the project instead of DataSpan. Ms. Choquer said that if she had the Phase II job, she would not have let Cook's have it instead of DataSpan. Ms. Choquer also said she did not know who was arranging Cook's installation of the tiles at the Phase II project.

9. Ms. Choquer then stated that MS, not Cook's, had kicked DataSpan off Phase II because MS had already obtained the tiles.

10. Ms. Choquer further claimed she had worked for three years to get MS's business and, although she had tried to keep MS's business, she couldn't compete.

11. At the end of our meeting, I informed Ms. Choquer she was suspended effective immediately, pending DataSpan's investigation.

2

12.     I also informed Ms. Choquer that DataSpan would be investigating the loss of MS's business.

13.     I collected Ms. Choquer's work-issued laptop and instructed her not to perform further work on DataSpan's behalf.

14.     During our meeting, Ms. Choquer did not mention she had copied and now possessed DataSpan's confidential and proprietary information on her personal devices.

15.     DataSpan sent Ms. Choquer's work-issued laptop to a third-party computer forensic consultant for analysis.

16.     On December 5, 2025, Co-CEOs Paul Zaidins and Sharon Zaidins and I called Ms. Choquer to discuss DataSpan's investigation of Phase II of the Floor Replacement Project and how Cook's was able to win the project.

17.     Ms. Choquer said Kevin Beck (who was not a DataSpan employee) had introduced Cook's owner Russell Cook to MS and that she and Mr. Beck had toured MS with Mr. Cook to introduce Cook's ASP tiles to MS.

18.     Ms. Choquer then claimed no vendor within the United States could provide the ASP tiles. She later claimed that only Mr. Beck could supply ASP tiles in the United States.

19.     Ms. Choquer admitted to working with Cook's on the Phase II project. She claimed she had no other recourse and she had to "take care of her customer."

20.     When asked why, if she had had difficulty sourcing the tiles, she had not reached out to DataSpan's management for help, Ms. Choquer responded that we "didn't understand."

21.     Ms. Choquer said she had used her personal Gmail email account to communicate with Cook's because she had had "too much to do."

3

22.     When asked whether she had been paid in connection with Cook's winning the Phase II project, Ms. Choquer refused to answer.

23.     Ms. Choquer also said she was working on several things "outside of DataSpan." Sharon Zaidins reminded Ms. Choquer she had a duty to DataSpan because she was DataSpan's employee.

24.     Ms. Choquer became angry during the call and denied she had done anything wrong.

25.     Ms. Choquer abruptly ended the phone call.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated December 19, 2025.

Signed by:

*John Bates*

4C6488E0A968479

John Bates
Vice President of Operations
DataSpan Holdings, Inc.