The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DATASPAN HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARIAN CHOQUER, <br><br> Defendant. | NO. 2:25-cv-2607-BJR <br><br> **ORDER REGARDING PLAINTIFF'S RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY AND FOR A SCHEDULING ORDER ON MOTION FOR PRELIMINARY INJUNCTION** |

## I.   INTRODUCTION

Plaintiff DataSpan Holdings, Inc. ("DataSpan") brings suit against Defendant Marian Choquer ("Choquer"), a former employee, for allegedly taking and retaining without authorization DataSpan's confidential information, including trade secrets. Currently before the Court are two motions: (1) Plaintiff's Renewed Motion for a Temporary Restraining Order ("Renewed TRO Motion") and (2) Plaintiff's Motion for Leave to Conduct Expedited Discovery and for a Scheduling Order on the Motion for Preliminary Injunction ("Motion for Expedited Discovery"). Dkt. Nos. 10 & 14, respectively. Choquer opposes both motions. Dkt. No. 16. Having reviewed the motions, the opposition and reply thereto, the record of the case, and the relevant legal authority, the Court grants the motion. The reasoning for the Court's decision follows.

ORDER - 1

## II.     PROCEDURAL HISTORY

DataSpan filed this lawsuit against Choquer on Thursday, December 18, 2025, alleging claims for trade secrets misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, breach of contract, breach of the duty of loyalty, and unjust enrichment. Dkt. No. 1. The next day on Friday, December 19, 2025, after the close of business, DataSpan filed a motion for an ex parte temporary restraining order ("TRO") and for a preliminary injunction. Dkt. No. 3. This Court denied the motion on Monday, December 22, 2025, noting among other things, that DataSpan had not satisfied the heightened requirement for an ex parte TRO. Dkt. No. 7.

Thereafter, on December 30, 2025, DataSpan filed an affidavit of service indicating that Choquer had been served with a copy of the summons and complaint on December 22, 2025. Dkt. No. 9. DataSpan then filed the instant Renewed TRO Motion on January 2, 2026 and the Motion for Expedited Discovery on January 6, 2026. Dkt. Nos. 10 & 14, respectively. This Court instructed Choquer to respond to both motions by the end of business on January 9, with DataSpan's reply thereto due on January 13. Dkt. No. 15. The motions are now ripe and ready for this Court's review.

## III.    FACTUAL BACKGROUND

DataSpan offers a variety of data-center-related services, including cleaning, floor replacement and repair, airflow management, and power solutions. To support these services, DataSpan employs account managers who act as the primary point of contact for customers from initial project discussions through service delivery. DataSpan alleges that it grants account managers access to its confidential information, including customer information, pricing, proposals, contracts, and project specifications. To protect this information, DataSpan requires

ORDER - 2

the account managers to execute employment agreements containing confidentiality and return-of-property provisions.

On August 25, 2022, Defendant Choquer joined DataSpan as an account manager and executed an Employee, Confidential Information, Non-Solicitation, and Non-Compete Agreement ("the Agreement"). DataSpan alleges that by executing the Agreement, Choquer acknowledged that its customer information and marketing strategies constitute confidential information, agreed to return all DataSpan property and confidential information upon request or termination, and agreed not to retain, recreate, or disclose such information.

DataSpan claims that in the first half of 2025, a longstanding and important customer retained DataSpan to perform a substantial floor replacement project at a data center. The project was divided into two phases, Phase I and Phase II, and Choquer served as the account manager during Phase I of the project, which DataSpan completed in the summer of 2025. DataSpan anticipated that it would also be awarded Phase II of the project, but after competition of Phase I, DataSpan became concerned that the work on Phase II had been diverted to one of its competitors, Modular Interiors by Cook's ("MIC").

On November 13, 2025, DataSpan's Vice President of Operations met with Choquer and questioned her regarding Phase II of the project. At the conclusion of the meeting, DataSpan suspended Choquer effective immediately, collected her work-issued laptop, and instructed her not to perform further work on DataSpan's behalf. DataSpan alleges that a subsequent forensic examination of the laptop showed that shortly before the meeting, Choquer copied a substantial volume of data from the laptop onto two personal USB storage devices, deleted thousands of files from the laptop, and used a personal cloud storage account to store DataSpan information. The copied data allegedly included extensive confidential information and trade secrets, such as

ORDER - 3

customer proposals, pricing, contracts, inspection reports, project documentation, and sales materials. The forensic investigation also recovered two MIC proposals related to Phase II of the project, dated July 1 and October 1, 2025, which Choquer had deleted from the laptop, and which did not appear in her DataSpan email account. DataSpan asserts that these circumstances suggest that Choquer received the proposals through a personal account, saved them locally, and later deleted them.

On December 5, 2025, DataSpan's executives spoke with Choquer regarding the investigation. DataSpan alleges that during that call, Choquer admitted that she worked with MIC on Phase II of the project and declined to answer whether she received compensation in connection with MIC obtaining the work. The call ended abruptly, and DataSpan terminated Choquer's employment effective immediately. That same day, DataSpan's counsel demanded that Choquer return all DataSpan property and comply with her confidentiality obligations. Choquer did not respond.

DataSpan alleges that Choquer remains in possession of voluminous DataSpan documents, including confidential customer proposals and pricing information, inspection reports and assessments, historical project files, and materials expressly designated as confidential by DataSpan and third parties. DataSpan further alleges that disclosure or misuse of this information would undermine its competitive position, damage its relationships with customers and vendors, and create a substantial risk of diverting ongoing and future business opportunities.

### IV.    REQUESTED RELIEF

DataSpan requests that this Court "enjoin[], restrain[], and order[] Choquer, and anyone acting in concert [] with her," as follows:

ORDER - 4

      i.      Choquer shall not use or disclose any confidential or proprietary information belonging to or originating from DataSpan ("DataSpan Information"), including but not limited to any DataSpan Information copied to the USB Devices on November 13, 2025;

      ii.      Within seventy-two (72) hours of entry of the TRO, Choquer shall identify, surrender, and provide access to any devices (e.g., computers, phones external storage devices, etc., including but not limited to the USB Devices) and accounts (e.g., email accounts, cloud storage accounts, etc.) to which Choquer has saved, sent, stored, or transmitted any DataSpan Information since July 1, 2025, to DataSpan's third-party forensic consultant and shall cooperate to provide access to the same for investigation and remediation of any DataSpan Information residing on or in such locations;

      iii.      Within seventy-two (72) hours of entry of the TRO, Choquer shall provide counsel for DataSpan a sworn accounting of all disclosures, copying, transfers, or other transmittals of any DataSpan Information that she has made to any third-party or location since November 13, 2025;

      iv.      Choquer shall not delete, alter, destroy, or otherwise spoliate any documents or electronically stored information containing, consisting of, or related to DataSpan Information; and

      v.      All other relief the Court deems appropriate.

Dkt. No. 10 at 1-2. DataSpan also requests that following entry of the TRO, this Court allow the parties to proceed with expedited discovery, including limited written discovery and depositions, and setting a briefing schedule for the motion for preliminary injunction after the issuance of the TRO. Dkt. No. 14 at 5-6.

### V.    LEGAL STANDARD

The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Thus, to obtain a TRO, a plaintiff must show: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

ORDER - 5

However, the Ninth Circuit has adopted a "sliding scale" approach, where the court may issue an injunction if "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor," assuming the moving party also establishes the other two *Winter* factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (quotation marks and citations omitted). Nevertheless, the moving party must show "at an irreducible minimum" that there is "a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) (citations omitted). Moreover, "[a]n injunction is a matter of equitable discretion and is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quotation marks and citations omitted).

## VI.   DISCUSSION

### A.   Motion for TRO

#### 1.   Likelihood of Success on the Merits

DataSpan asserts likelihood of success on the merits of its DTSA claim. The DTSA creates a private cause of action in federal court for trade secret misappropriation. *See* 18 U.S.C. § 1836(b)(1). The trade secret must be "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DTSA is violated if, among other things, someone "with intent to convert a trade secret" "to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly" "without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information[.]" 18 U.S.C.A. § 1832(a)(2).

ORDER
- 6

1  Similarly, under Washington state law, a trade secret is "misappropriated" if it is acquired "by a
2  person who knows or has reason to know that the trade secret was acquired by improper means."
3  RCW 19.108.010(2). Improper means "includes theft." RCW 19.108.010(1).

4        Here, DataSpan has provided declarations in support of its request for a TRO that
5  substantiate its claim that Choquer accessed, downloaded to personal USB devices, and saved
6  confidential information that likely includes trade secrets for the purpose of using the
7  information to her own ends and in a manner that would be harmful to DataSpan's business.
8  DataSpan has presented testimony that suggests that the downloaded information includes
9  customer proposals and pricing details for current and future projects, contracts, historical client
10 information, inspection reports, and documents designated as confidential by not only DataSpan
11 but its customers. *See*, *e.g*., Zaidins Dec., Ex. 10-2 at ¶¶ 25-29, 45; Vaughn Dec., Ex. 10-4.
12 Clearly this type of information constitutes confidential trade secrets. "Customer information
13 such as sales history and customer needs and preferences constitute trade secrets." *Henry Schein,*
14 *Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (citing *MAI Sys. Corp., v. Peak*
15 *Computer, Inc*., 991 F.2d 511, 521 (9th Cir. 1993)). The fact that Choquer downloaded the
16 information onto private USB devices immediately before her meeting with her supervisors is
17 strong circumstantial evidence that she knew she was about to be terminated and wanted to
18 obtain the information before she lost access to it. Likewise, the fact that a proposal from MIC,
19 DataSpan's competitor for Phase II of the project, was found on Choquer's laptop and that MIC
20 was later awarded the Phase II project, lends further credence that Choquer was working with
21 MIC.

22       Choquer does not deny that she downloaded the confidential information; rather, she
23 claims that she plans to "utilize[]" the information to "support [her] filings to the Washington

ORDER - 7

department of Labor as well as the federal branch." Dkt. No. 10-5, Ex. 3. This allegation does not save her. First, legal precedent is clear that an employee cannot steal employer property on the way out the door in order to engage in "litigation self-help." *See, e.g.*, *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763-64 (9th Cir. 1996) ("[W]e are loathe to provide employees an incentive to rifle through confidential files looking for evidence that might come in handy in later litigation"). Second, if DataSpan's allegations are proven true, Choquer has already demonstrated a willingness to use DataSpan's confidential information (including proposals for active and future projects) to assist its competitors.

The Court concludes that DataSpan is also likely to succeed on the merits of its breach of contract claim. Choquer's employment agreement requires her to immediately return all of DataSpan's confidential information in her possession upon request and/or termination—a fact that Choquer does not dispute. DataSpan has both terminated Choquer and repeatedly demanded return of its confidential information, yet Choquer has failed to return the requested information—again, facts that she does not dispute. Thus, DataSpan has established that its likely to prevail on its breach of contract claim.

### 2. Likelihood of Irreparable Harm in the Absence of Injunctive Relief

DataSpan alleges that it has already suffered irreparable harm and will continue to do so as long as Choquer remains in possession of its confidential information. Choquer counters that DataSpan's alleged irreparable harm is "speculative" and "economic" and therefore it has not met its burden of establishing that it faces a likelihood of irreparable harm. This Court disagrees with Choquer. First, DataSpan asserts that the stolen confidential information appears to relate to future projects and active proposals, thus the risk of potential competitive misuse by Choquer is especially high. And second, DataSpan alleges more than just the potential loss of future

ORDER
- 8

projects, it also asserts that its relationship with clients could be irreparably damaged—an injury that cannot be easily quantified and compensated with money damages. "'[E]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.'" *Henry Schein, Inc.*, 191 F. Supp. 3d at 1077 (quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001)). Therefore, the Court concludes that DataSpan has established the likelihood of irreparable harm absent injunctive relief.

### 3. The Balance of Equities Tips in DataSpan's Favor

DataSpan argues that the balance of equities tips in its favor because Choquer "has no legal right to the documents she stole" and requiring "her to return them will cause her no harm." Choquer counters that her right to privacy will be invaded if she is required to submit her devices to a forensic consultant. The Court agrees with DataSpan that the equities tip in its favor. No harm will come to Choquer by preventing her from using misappropriated confidential material and prohibiting her from destroying any evidence of such. Any privacy concerns can be properly mitigated through the use of a mutually agreed upon, independent, third-party computer forensics expert. *See Redapt Inc. v. Parker*, 2020 WL 3128859, *5 (W.D. Wash. June 11, 2020).

### 4. Public Interest

DataSpan argues that preventing theft of trade secrets is in the public interest. This Court agrees: "the public interest is served when defendant is asked to do no more than abide by trade laws and the obligations of contractual agreements signed with her employer. Public interest is also served by enabling the protection of trade secrets." *Redapt Inc. v. Parker*, 2020 WL 3128859, *6 (W.D. Wash. June 11, 2020) (quoting *Henry Schein, Inc.*, 191 F. Supp. 3d at 1078).

ORDER - 9

**5.   Bond**

Generally, courts may grant a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully ... restrained." Fed. R. Civ. P. 65(c). "A district court 'may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Redapt Inc. v. Parker*, 2020 WL 3128859, *6 (W.D. Wash. June 11, 2020) (*quoting Navigant Consulting, Inc. v. Milliman, Inc.*, 2018 WL 3751983, *4 (W.D. Wash. Aug. 8, 2018). The Court finds that the risk of harm to Choquer is minimal; she is simply being ordered to not disseminate or destroy information that she allegedly misappropriated. Nevertheless, the Court will order DataSpan to post a security bond of $1,000 to be released following the return of Choquer's devices after the forensic evaluation.

**B.   Motion for Expedited Discovery**

Under Federal Rule of Civil Procedure 26, courts have the authority to order expedited discovery that takes place before the parties have conferred regarding the scope of discovery. Fed. R. Civ. P. 26(d)(1). A party seeking expedited discovery must show "good cause" to depart from the usual discovery process. *Byrd v. Barbieri*, 2025 WL 3211801, * 5 (E.D. Cal. Nov. 18, 2025) (citing *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). In evaluating whether good cause has been shown, courts consider several factors, including: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting expedited discovery; (4) the burden on defendants to comply with the request; and (5) how far in advance of the typical discovery process the request is made. *Id*.

Here, DataSpan requests that each party be allowed to serve five interrogatories and five requests for production on the opposing party, serve non-party subpoenas, and conduct two

ORDER - 10

(virtual) depositions per side, limited to three hours each. DataSpan requests that the written discovery be served within two business days of the date of this order and the responses served within ten days of the date served. It further requests that the depositions occur within seven days of the discovery responses. The Court finds that DataSpan has demonstrated good cause for expedited discovery and that the requested discovery is reasonable. Therefore, Court will grant the request.

## VII.    CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS DataSpan's Renewed TRO Motion [Dkt. No. 10]. Choquer and anyone working in concert with her is enjoined, restrained, and ordered as follows:

   i.   Choquer shall not use or disclose any confidential or proprietary information belonging to or originating from DataSpan ("DataSpan Information"), including but not limited to any DataSpan Information copied to the USB Devices on November 13, 2025;

   ii.  Within seventy-two (72) hours of entry of the TRO, Choquer shall identify, surrender, and provide access to any devices (e.g., computers, phones external storage devices, etc., including but not limited to the USB Devices) and accounts (e.g., email accounts, cloud storage accounts, etc.) to which Choquer has saved, sent, stored, or transmitted any DataSpan Information since July 1, 2025, to a mutually agreed upon third-party forensic consultant and shall cooperate to provide access to the same for investigation and remediation of any DataSpan Information residing on or in such locations;

   iii. Within seventy-two (72) hours of entry of the TRO, Choquer shall provide counsel for DataSpan a sworn accounting of all disclosures, copying, transfers, or other transmittals of any DataSpan Information that she has made to any third-party or location since November 13, 2025; and

   iv.  Choquer shall not delete, alter, destroy, or otherwise spoliate any documents or electronically stored information containing, consisting of, or related to DataSpan Information.

In addition, DataSpan's request for expedited discovery is granted [Dkt. No. 14]. Each party may serve up to five interrogatories and five requests for production on the

ORDER - 11

opposing party, serve non-party documentary subpoenas, and conduct two (virtual) depositions per side, limited to three hours each. The written discovery shall be served within two business days of the date of this order and the responses thereto served within ten days of the date served. The depositions shall occur within seven days of the discovery responses.

Lastly, the parties shall submit briefing on DataSpan's request to convert the TRO into a preliminary injunction. DataSpan shall file a revised motion requesting a preliminary injunction on or before Thursday, February 12, 2026, Choquer's response shall be filed on or before Thursday February 19, 2026, and the reply shall be filed on or before Wednesday, February 25, 2026. The page limitations shall comply with those set forth in this Court's Standing Order [Dkt. No. 8].

The TRO will remain in effect until the resolution of the foregoing motion for a preliminary injunction.[1]

Dated this 15th day of January 2026.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge

---

[1] While TROs typically expire after fourteen days, the Court may extend them for good cause. Based on the record before it and the discovery and motion schedules outlined above, the Court presumptively extends the expiration deadline. Choquer may move for relief if she believes such relief is necessary.

ORDER - 12